## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

BOBBY STEVENSON

CIVIL ACTION

VERSUS

22-472-SDD-RLB

JACOB C. JOHNSON, ET AL.

## RULING

This matter is before the Court on the Motion for Summary Judgment[1] filed by Defendants, Dr. Randy Lavespere and Dr. Paul M. Toce (collectively, "Defendants"). Plaintiff, Bobby Stevenson ("Plaintiff" or "Stevenson"), filed an Opposition,[2] to which Defendants filed a Reply.[3] For the reasons which follow, the Motion will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an inmate at Louisiana State Penitentiary ("LSP"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that LSP medical personnel were deliberately indifferent to his serious medical needs. He seeks monetary and injunctive relief. Plaintiff named three defendants in the Complaint: Dr. Jacob C. Johnson ("Johnson"), Dr. Paul M. Toce ("Toce"), and Dr. Randy Lavespere ("Lavespere").[4]

The three original defendants jointly filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] The defendants argued that Plaintiff failed to state a claim and that they were entitled to qualified immunity. The Magistrate Judge found that

---

[1] Rec. Doc. 63.
[2] Rec. Doc. 65.
[3] Rec. Doc. 68.
[4] Rec. Doc. 1. *See also* Amended Complaint, Rec. Doc. 25.
[5] Rec. Doc. 12.

Plaintiff's claims against Johnson should be dismissed for failure to state a claim, but the allegations against Lavespere and Toce were sufficient to withstand Rule 12(b)(6) scrutiny.[6] This Court adopted the Magistrate Judge's report and recommendation, granting the defendants' motion to dismiss as to Johnson but denying the motion as to the individual-capacity claims against Lavespere and Toce.[7] Lavespere and Toce appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed the denial of the motion to dismiss.[8]

The underlying facts in this matter are largely undisputed. On or about October 8, 2003, Plaintiff fractured his right ankle while playing basketball.[9] On October 29, 2003, physicians surgically repaired Plaintiff's right ankle injury with trans-syndesmotic screw fixation.[10] Plaintiff's ankle fracture showed signs of healing following the surgery.[11] However, one of Plaintiff's ankle screws broke at some point within six months of the surgery.[12] Plaintiff's treating orthopedist noted the broken screw during a visit on April 12, 2004, and prescribed an ankle sleeve and anti-inflammatories.[13] During follow-up visits in May of 2006 and May of 2007, orthopedists again made note of a broken screw in Plaintiff's ankle.[14] Plaintiff claims he was not told about the broken screws at this time.[15]

At LSP, prison medical providers establish a patient's physical limitations through assigning a "duty status."[16] An inmate's duty status is medically determined based on the

---

[6] Rec. Doc. 26.
[7] Rec. Doc. 31.
[8] *Stevenson v. Toce*, 113 F.4th 494, 500 (5th Cir. 2024).
[9] Rec. Docs. 63-2 & 65-1, ¶ 1.
[10] *Id.* at ¶ 2.
[11] *Id.* at ¶ 3.
[12] *Id.* at ¶ 5.
[13] *Id.* at ¶¶ 6, 7.
[14] *Id.* at ¶¶ 8, 9. *See also* Rec. Doc. 63-26, pp. 10–12.
[15] Rec. Doc. 65, pp. 4–5.
[16] Rec. Docs. 63-2 & 65-1, ¶ 25.

patient's medical conditions and functional capacity, and duty status may be modified upon clinical examination.[17] Security officials assign jobs to prisoners based on their duty status to accommodate any physical limitations they may have.[18]

In 2004, Plaintiff was granted a "temporary" duty status with restrictions against prolonged walking and weight-bearing due to his "ankle fracture."[19] This temporary status expired one month later.[20] After the duty restrictions were removed, Plaintiff complained of ankle pain multiple times.[21] In 2008, Plaintiff was granted a "permanent" restricted duty status which prohibited field work and prolonged walking and standing.[22] According to Plaintiff, his ankle pain largely subsided with these restrictions in place.[23]

Lavespere began working at LSP as a staff physician in 2009.[24] He treated Plaintiff multiple times between 2010 and 2013.[25] Lavespere became LSP's medical director in 2014 and served in that position until 2021.[26]

In July of 2019, Plaintiff was assigned to a holding area known as Camp D.[27] Upon his arrival there, he maintained his restricted duty status which prohibited prolonged walking and standing.[28] However, soon after his arrival, the nurse practitioner ("NP") at Camp D evaluated Plaintiff and recommended that Plaintiff's duty status be changed to "regular" with no restrictions.[29] Lavespere, the medical director at the time, agreed with

---

[17] *Id.* at ¶¶ 26, 33.
[18] *Id.* at ¶¶ 24, 28, 29.
[19] Rec. Doc. 15-2, p. 58.
[20] *Id.*
[21] Rec. Doc. 40-3, pp. 119, 130; Rec. Doc. 40-1, p. 165; Rec. Doc. 63-26, p. 12.
[22] Rec. Doc. 15-2, p. 53.
[23] Rec. Doc. 65, p. 6.
[24] Rec. Doc. 63-6, pp. 16–17.
[25] *Id.* at pp. 36–37.
[26] Rec. Docs. 63-2 & 65-1, ¶ 92.
[27] *Id.* at ¶ 12.
[28] *Id.* at ¶ 13.
[29] Rec. Doc. 63-11.

and approved the NP's recommendation to change Plaintiff's duty status to regular.[30] A few months prior, in April of 2019, Plaintiff had visited the physician's clinic and complained of swelling in his right ankle.[31]

After the change in his duty status, corrections officers assigned Plaintiff to work in LSP's agricultural fields.[32] One day while working the field, Plaintiff notified a security officer that his feet were swelling.[33] Plaintiff had been working the fields for "about a week" at this point.[34] Upon Plaintiff's complaint of swelling, the security officer brought Plaintiff to the sally port and instructed another officer not to send him back out to the field.[35] Plaintiff has not worked in the fields since.[36]

Later, in September of 2019, Plaintiff sought treatment for ankle pain and to address his duty status.[37] The responding medical provider assessed Plaintiff and deemed his regular duty status appropriate.[38]

Plaintiff complained of leg pain and requested a duty status change again in January of 2020.[39] The responding medical provider noted swelling in both legs but made no change to Plaintiff's duty status.[40]

In March of 2020, Plaintiff presented to the physicians' clinic for, *inter alia*, right ankle pain.[41] An x-ray revealed two broken surgical screws in Plaintiff's right ankle, and

---

[30] Rec. Doc. 63-10; Rec. Doc. 63-6, pp. 48–49.
[31] Rec. Doc. 15-2, p. 207.
[32] Rec. Docs. 63-2 & 65-1, ¶ 14.
[33] *Id.* at ¶¶ 17, 18.
[34] *Id.* at ¶ 16.
[35] *Id.* at ¶ 19.
[36] *Id.* at ¶ 21.
[37] *Id.* at ¶ 39.
[38] *Id.* at ¶ 40.
[39] *Id.* at ¶ 41.
[40] *Id.* at ¶ 42.
[41] *Id.* at ¶ 43.

the clinician noted "arthritic changes" in the right ankle.[42] Plaintiff claims that this is the first time he learned that there were broken screws in his ankle. He visited the clinic again in October of 2020, complaining of right ankle pain and requesting a change in his duty status.[43] The treating provider made no changes to his duty status.[44] He again returned to the clinic in April of 2021, but voiced no complaints of ankle pain during this visit.[45]

In July of 2021, Plaintiff filed an Administrative Remedy Procedure ("ARP") wherein he complained of his recurrent ankle pain.[46] He requested referral to an orthopedist as well as money damages.[47] The following month, Lavespere ordered a right ankle x-ray and referred Plaintiff to LSP's in house orthopedic specialist, Dr. Ronald Sylvest.[48] Lavespere asked Dr. Sylvest to evaluate Plaintiff's right ankle, to determine whether Plaintiff's broken screws needed to be removed, and to determine whether Plaintiff needed any physical restrictions.[49] Dr. Sylvest examined and treated Plaintiff's ankle on September 23, 2021.[50] Dr. Sylvest noted broken screws and post-traumatic osteoarthritis, but concluded there was no need to remove the screws or to restrict Plaintiff's duty status.[51] Dr. Sylvest prescribed a lace-up brace for Plaintiff's ankle.[52] At a follow-up visit in March of 2022, Dr. Sylvest instructed Plaintiff to treat his ankle with heel stretches and did not recommend duty status restrictions.[53]

---

[42] *Id.* at ¶ 45. *See also* Rec. Doc. 63-26, p. 19.
[43] *Id.* at ¶¶ 46, 47.
[44] *Id.* at ¶ 48.
[45] *Id.* at ¶ 49.
[46] Rec. Doc. 63-5, pp. 4–5.
[47] *Id.*
[48] Rec. Docs. 63-2 & 65-1, ¶ 57.
[49] *Id.* at ¶ 58.
[50] *Id.* at ¶ 62.
[51] *Id.* at ¶¶ 63, 64.
[52] *Id.* at ¶ 65.
[53] *Id.* at ¶¶ 66, 68, 69.

In June of 2022, Plaintiff wrote a letter to LSP medical staff complaining of severe pain due to broken surgical screws in his ankle.[54] Toce, who took over Lavespere's position as LSP's medical director in 2021, responded to the letter by recounting the treatments that Dr. Sylvest had recommended—a lace-up brace and heel stretches.[55] Toce also noted that Dr. Sylvest had not recommended corrective surgery.[56]

Another x-ray of Plaintiff's ankle was conducted in March of 2025, and Dr. Sylvest referred Plaintiff to University Medical Center for a second opinion regarding removal of the screws.[57] The specialist at University Medical Center prescribed Mobic, physical therapy, a lace-up ankle brace, and recommended no prolonged walking and no "field/ditch duty."[58]

Plaintiff currently has a restricted duty status and, due to the treatment he is now receiving, he has no current medical complaints.[59]

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[60] This determination is made "in the light most favorable to the opposing party."[61] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with

---

[54] Rec. Doc. 25-1.
[55] Rec. Doc. 25-2, p. 1.
[56] *Id.*
[57] Rec. Docs. 63-2 & 65-1, ¶¶ 70–73.
[58] *Id.* at ¶ 76.
[59] *Id.* at ¶¶ 108, 111.
[60] FED. R. CIV. P. 56(a).
[61] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

respect to those issues on which the movant bears the burden of proof at trial."[62] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[63] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[64]

Notably, "[a] genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[65] All reasonable factual inferences are drawn in favor of the nonmoving party.[66] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[67] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment."[68]

## B. Qualified Immunity

Defendants argue they are entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right

---

[62] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[63] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[64] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

[65] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

[66] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[67] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)).

[68] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).

was 'clearly established' at the time of the challenged conduct."[69] Plaintiff has the burden of proving that the qualified immunity defense is not available by making these two showings.[70]

### 1. Eighth Amendment Violation

Plaintiff claims that Defendants violated his rights under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment of individuals convicted of crimes. More specifically, Plaintiff claims that he was not provided with constitutionally adequate medical care. To establish such a claim, a plaintiff must show that appropriate medical care has been denied and that the denial constituted "deliberate indifference to serious medical needs."[71] Deliberate indifference imposes a high standard, requiring a plaintiff to show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[72] A defendant acts with deliberate indifference when he "knows of and disregards an excessive risk to [the prisoner's] health or safety."[73] "Mere negligence, neglect, or medical malpractice" does not constitute deliberate indifference, and a plaintiff's mere disagreement with his treatment is likewise insufficient.[74]

Additionally, "the prisoner's medical need must be 'serious'—meaning either

---

[69] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[70] *Joseph ex. rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (good-faith assertion of qualified immunity "alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.").

[71] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).

[72] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson*, 759 F.2d at 1238)).

[73] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[74] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (citing *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999)).

treatment has been recommended, or the need for treatment is 'so apparent that even laymen would recognize' it."[75]

### i.    Claim against Lavespere

Plaintiff argues Lavespere displayed deliberate indifference when he changed Plaintiff's duty status to regular and unrestricted, thereby allowing Plaintiff to be subject to strenuous field work which entailed serious medical risks due to Plaintiff's condition.[76] The Fifth Circuit has explained that "an official violates a prisoner's Eighth Amendment rights if he requires the prisoner to do work that he 'kn[o]w[s] w[ill] significantly aggravate [the prisoner's] serious physical ailment.'"[77]

The NP at Camp D made the initial recommendation that Plaintiff's duty status be changed to unrestricted in July of 2019.[78] The record reflects that Lavespere, in his position as medical director, entered the official order modifying Plaintiff's duty status to "regular duty [ ] permanent" on the following day.[79]

The parties dispute the extent of Lavespere's role in the duty status change. Defendants argue that Lavespere is not responsible because he "was unaware that [Plaintiff] had any physical limitations that required a modified duty status in 2019," and he relied on the NP's "independent determination that [Plaintiff] had no physical limitations that required a modified duty status[.]"[80] Defendants also point out that security officers assigned Plaintiff to field work in 2019, and medical providers at LSP do not assign jobs

---

[75] *Stevenson*, 113 F.4th at 502 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)).
[76] Rec. Doc. 65, p. 17.
[77] *Stevenson*, 113 F.4th at 503 (quoting *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) (citing *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).
[78] Rec. Doc. 63-11.
[79] Rec. Doc. 63-10.
[80] Rec. Doc. 63-1, pp. 22–25.

to inmates.[81]

Plaintiff argues Lavespere was aware that lifting Plaintiff's duty status restrictions would pose a substantial risk of serious harm. The parties agree that Plaintiff's ankle pain subsided during the time his duty status was restricted from 2008 to 2019.[82] Lavespere treated Plaintiff multiple times between 2010 and 2013.[83] A medical record from 2010 makes note of an "old ankle injury."[84] Lavespere treated Plaintiff for left hip pain in 2013.[85] The NP's recommendation for removing the restrictions from Plaintiff's duty status in 2019 listed edema (i.e., swelling) as a "chief complaint."[86] Lavespere was aware that lifting the restrictions could result in Plaintiff being assigned to work in the fields.[87] Plaintiff argues this evidence shows Lavespere's awareness that an unrestricted duty status would subject Plaintiff to a substantial risk of serious harm. Plaintiff further argues that Lavespere failed to consult Plaintiff's medical charts to ensure that an unrestricted duty status was safe.[88]

Viewing the facts in the light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact precluding summary judgment as to Lavespere. Under the deliberate indifference standard, courts recognize that "a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."[89] For example, the Supreme Court reasoned as follows in *Farmer v. Brennan*:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding,

---

[81] *Id.*
[82] Rec. Docs. 65-2 & 68-1, ¶ 5.
[83] Rec. Doc. 63-6, pp. 36–37.
[84] Rec. Doc. 15-4, p. 52.
[85] *Id.* at p. 19.
[86] Rec. Doc. 63-11.
[87] *See* Rec. Doc. 63-6, p. 59
[88] Rec. Doc. 65, p. 21.
[89] *Easter*, 467 F.3d at 463 (citing *Farmer*, 511 U.S. at 842–43).

> pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.[90]

Plaintiff arrived at Camp D with a "permanent" restricted duty status due to his ankle problems. Plaintiff has pointed to evidence raising a factual issue that Lavespere was at least aware of Plaintiff's original ankle injury.[91] Further, the medical record reflects that Plaintiff complained of swelling in his right ankle "from previous surgery" in April of 2019, just a few months before the restrictions on his duty status were removed.[92] And the NP's recommendation, which Lavespere reviewed and approved, shows that Plaintiff still had complaints of swelling when the decision was made to change his status.[93] A reasonable jury could find that Lavespere displayed deliberate indifference by revoking Plaintiff's duty restrictions despite knowing of Plaintiff's history of ankle problems, thereby subjecting Plaintiff to field work which Lavespere knew would aggravate his condition.

Further, Lavespere's deposition testimony indicates that he did not review Plaintiff's medical chart before approving the NP's recommendation of regular duty.[94] Lavespere testified that he did not review the chart because of his confidence in the NP's independent judgment.[95] But he also acknowledged that such recommendations by an NP ultimately "need to be approved by the medical director."[96] Lavespere's testimony

---

[90] *Farmer*, 511 U.S. at 843.
[91] *See* Rec. Doc. 15-4, p. 52, a medical record from 2010 noting Plaintiff's "old ankle injury." Whether or not this document shows Lavespere knew of the ankle problems presents an issue of fact.
[92] Rec. Doc. 15-2, p. 207.
[93] Rec. Doc. 63-11.
[94] Rec. Doc. 63-6, p. 51.
[95] *Id.* at pp. 51–52.
[96] *Id.* at p. 53. Additionally, Toce testified that the medical doctors have the "ultimate authority" to enact duty status changes. Rec. Doc. 63-12, pp. 73–74.

further shows his knowledge that Camp D is a "work camp" where prisoners are commonly directed to work in the field.[97] Plaintiff received permanent restrictions on his duty status in 2008 due to ankle pain. The permanent restrictions specifically noted that Plaintiff should be "out of field."[98] After more than ten years of essentially no ankle problems with his permanent restricted status, the restrictions were cursorily removed and Plaintiff experienced serious ankle issues almost immediately after being placed on field duty with his newly unrestricted status. In the Court's view, a reasonable jury could conclude that Lavespere's revocation of Plaintiff's permanent restricted duty status without further investigation, such as consulting Plaintiff's medical chart, under these circumstances constituted deliberate indifference and resulted in serious harm, namely field work causing severe pain from the exacerbation of Plaintiff's existing and documented ankle issues.

As to the second qualified immunity prong, the rights allegedly violated by Lavespere were clearly established at the relevant time. On this point, the Fifth Circuit in this matter cited *Jackson v. Cain*, where the plaintiff stated a claim for deliberate indifference by alleging "that officials knew he suffered from syphilis and knew that exposure to sunlight would hinder his treatment but still forced him to work in the sun."[99] Applying that law to this case, the Fifth Circuit noted that "[Stevenson's] circumstances are essentially the same. He alleges that the Defendants knew of the broken screws and knew that field labor was likely to worsen his condition and cause him severe pain but still forced him to do it. *Jackson* clearly established that such circumstances, if proven true,

---

[97] *Id.* at p. 59.
[98] Rec. Doc. 15-2, p. 53.
[99] *Stevenson*, 113 F.4th at 504 (citing *Jackson*, 864 F.2d 1246–47).

violate the Eighth Amendment."[100]

The Court acknowledges Defendants' point here that security officers, not Lavespere, actually assigned Plaintiff to field work in 2019.[101] However, a reasonable jury could find that Lavespere's revocation of Plaintiff's restrictions is what allowed Plaintiff to be assigned to field work, and Lavespere knew that prisoners at Camp D are commonly assigned to work the fields. Thus, this argument does not absolve Lavespere of potential liability.

For the reasons provided, the Motion is denied with respect to the claims against Lavespere.

### ii.    Claim against Toce

It is undisputed that Toce was not employed at LSP in 2019 when Plaintiff's duty status was changed.[102] Accordingly, Toce was not involved in the alleged re-injury or exacerbation of Plaintiff's ankle condition in 2019 when Plaintiff was subject to field work due to the removal of his permanent restrictions. Toce replaced Lavespere as LSP's medical director in 2021, thereby assuming responsibility for overseeing LSP patient care.[103]

Plaintiff admits that Toce first learned of Plaintiff's ankle issues in the summer of 2021, shortly after he became medical director.[104] As noted above, in July of 2021, Plaintiff filed an ARP complaining of ankle pain and requesting referral to an orthopedist.[105] The next month, Plaintiff was referred to orthopedic specialist Dr. Sylvest,

---

[100] *Id.* at 504–05.
[101] Rec. Docs. 63-2 & 65-1, ¶ 22.
[102] Rec. Doc. 63-12, p. 93.
[103] Rec. Docs. 63-2 & 65-1, ¶¶ 94, 96.
[104] *Id.* at ¶ 52.
[105] Rec. Doc. 63-5, pp. 4–5.

who examined Plaintiff and concluded there was no need to remove the screws from his ankle.[106] About a year later, in June of 2022, Plaintiff wrote a letter addressed to Dr. Jacob Johnson complaining of continuing ankle pain and requesting referral to an "ortho specialist."[107] Toce responded to the letter, noting Dr. Sylvest's finding that corrective surgery was not needed and his recommendations of a brace and heel stretches.[108]

Plaintiff claims that Toce's response to Plaintiff's ARP and subsequent letter was inadequate because Toce "failed to address whether surgery or further imaging was necessary, and he failed to order that further imaging or surgery be considered."[109] Plaintiff argues Toce should have provided a referral to an orthopedic surgeon for repair or replacement of the screws.[110]

The Court finds that Plaintiff has failed to make a sufficient showing of deliberate indifference as to Toce. It is undisputed that none of the orthopedic specialists that Plaintiff has consulted with have recommended removal of the screws.[111] It is further undisputed that Plaintiff has never consulted Toce regarding an ankle issue in a clinical setting.[112] After the filing of the ARP, Plaintiff was promptly referred to Dr. Sylvest, an orthopedic surgeon, who determined there was no need for surgery to remove or repair the broken screws.[113] Plaintiff saw Dr. Sylvest a second time less than three months prior to Plaintiff's letter written in June of 2022, where Dr. Sylvest again did not recommend surgery and

---

[106] Rec. Docs. 63-2 & 65-1, ¶ 64.
[107] Rec. Doc. 25-1.
[108] Rec. Doc. 25-2, p. 1.
[109] Rec. Doc. 65, p. 9.
[110] Id. at p. 15.
[111] Rec. Docs. 63-2 & 65-1, ¶ 83.
[112] Id. at ¶ 50. Although Toce personally examined Plaintiff in 2017 and 2018, Toce's testimony is unrefuted that Plaintiff made no complaints of ankle problems during these visits. See Rec. Doc. 63-12, p. 91.
[113] Id. at ¶ 64.

suggested treating the pain with heel stretches.[114] The Court finds that Plaintiff has failed to show Toce was deliberately indifferent by referring Plaintiff to the recent findings of the Dr. Sylvest. Further, Dr. Sylvest later referred Plaintiff to University Medical Center, where specialists again did not recommend surgery.[115] The record reflects that Plaintiff has continued to receive treatment for his ankle and has no current medical complaints.[116]

Because Plaintiff has failed to show that Toce committed a constitutional violation, he has failed to overcome the first prong of qualified immunity. Therefore, the Court will not consider the second prong.[117] Accordingly, the Court will grant the Motion with respect to the claims against Toce.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[118] is GRANTED IN PART and DENIED IN PART.

The Motion is GRANTED as to Plaintiff's claims against Defendant Dr. Paul M. Toce, which are hereby dismissed with prejudice.

The Motion is DENIED as to the claims against Defendant Dr. Randy Lavespere.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 7th  day of ____January____, 2026.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[114] *Id.* at ¶ 69.
[115] *Id.* at ¶ 83.
[116] *Id.* at ¶¶ 89, 108.
[117] *See, e.g., Bryant v. Gillem*, 965 F.3d 387, 393 (5th Cir. 2020) ("Because [Plaintiff] has failed to show a violation of any Fourth Amendment rights, we need not consider the second qualified-immunity prong.").
[118] Rec. Doc. 63.